EXHIBIT 1

(Rev. 5/05)

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE



(1) __RICHARD I. BLACKSTON #215299__
   (Name of Plaintiff)       (Inmate Number)

__P.O. Box 9561, WILM. DE 19809__
   (Complete Address with zip code)

(2) _____
   (Name of Plaintiff)       (Inmate Number)

                                ~ 0 6 - 4 4 8 ~

_____
   (Complete Address with zip code)               (Case Number)
                                  ( to be assigned by U.S. District Court)

(Each named party must be listed, and all names
must be printed or typed.  Use additional sheets if needed)

               vs.                     **CIVIL  COMPLAINT**

(1) __CORRECTIONAL MEDICAL SYSTEMS__
                               __(CMS)__

(2) _____

(3) _____           Jury Trial Requested
      (Names of Defendants)

(Each named party must be listed, and all names
must be printed or typed.  Use additional sheets if needed)

I.   **PREVIOUS LAWSUITS**

    A.   If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number
        including year, as well as the name of the judicial officer to whom it was assigned:

      __N/A_____

      _____

      _____

      _____

      _____

      _____

*Stamp at top right:* RECEIVED OCT 23 2006 By _____

*Stamp at middle right:* FILED JUL 24 2006 U.S. DISTRICT COURT DISTRICT OF DELAWARE

II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A.    Is there a prisoner grievance procedure available at your present institution?   •  (Yes)  •  •No

B.    Have you fully exhausted your available administrative remedies regarding each of your present claims?  •  (Yes)  •  •No

C.    If your answer to "B" is Yes:

1. What steps did you take? I FILED SEVERAL GRIEVANCES ABOUT MY ISSUE.

2. What was the result? THE GRIEVANCES WERE RETURNED TO ME AS "NON-GRIEVABLE."

D.    If your answer to "B" is No, explain why not  N|A

III.   DEFENDANTS (in order listed on the caption)

(1) Name of first defendant: CORRECTIONAL MEDICAL SYSTEMS (CMS)

Employed as HEALTH CARE PROVIDER at H.R.Y.C.I.

Mailing address with zip code: 12647 OLIVE BLVD. ST. LOUIS, MO 63141

(2) Name of second defendant:

Employed as _____ at _____

Mailing address with zip code: _____

(3) Name of third defendant: _____

Employed as _____ at _____

Mailing address with zip code: _____

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

2

## IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. SEE ATTACHED

2. SEE ATTACHED

3. SEE ATTACHED

## V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. DUE TO THE KNOWING, INTENTIONAL, AND MALICIOUS DELIBERATE INDIFFERENCE AND CRUEL AND UNUSUAL PUNISHMENT, I REQUEST EXTENSIVE MONETARY PUNITIVE DAMAGES.

3

## INITIAL COMPLAINT

1.  Circa April of 2006, the Plaintiff visited the in-house Dentist at the Howard R. Correctional Institution, wherein he properly had two (2) bottom, right molars pulled.

2.  While the aforementioned pulling was in progress, the Plaintiff alerted the dentist to the fact that he was in severe pain due to a front, left tooth that was in need of a filling. Upon receiving the Plaintiff's request for a filling, the dentist informed him that their was an unwritten *policy* that prohibited any fillings from being placed in inmates' teeth without the requesting inmate having at least 6 months served inside of the facility. The Plaintiff promptly requested to view the so-called *policy*, but was summarily denied access, seemingly because the *policy* did not exist.

3.  Following the appropriate protocol for incidents such as the aforementioned, the Plaintiff filed an Inmate Grievance with the Commissioner of Corrections on the matter in April of 2006 (the same month that the incident occurred). He thoroughly and clearly articulated his cause of action, and humbly requested that he be granted proper medical care, referring to the obvious pain and discomfort that he was experiencing due to his bad front, left tooth.

4.  The aforesaid Inmate Grievance was returned to the Inmate Grievance Committee at Howard R. Young Correctional Institution from Commissioner Stanley Taylor, and presumed to be "pending a hearing."

5.  A hearing was never convened, and the Plaintiff's pain continued to accrue at a very rapid and immense rate.

6.  Subsequent to the above-mentioned chain of events, the Plaintiff filed a follow-up grievance in June of 2006, which he sent directly to Warden Raphael Williams of H.R.Y.C.I. The said grievance was, again, returned to the Inmate Grievance Committee within H.R.Y.C.I., instead of being reviewed on the emergency basis that it was submitted in.

7.  The Inmate Grievance Committed, upon an *ad hoc* summary perusal of the Plaintiff's grievance, ruled that the Plaintiff's claim was "non-grievable." This assertion clearly demonstrates that H.R.Y.C.I. offered no available remedy for the Plaintiff

8.  Still feeling as if he was being treated deliberately indifferent due to his inmate status, the Plaintiff submitted a grievance to the Bureau Chief of the Department of Corrections concerning all that had transpired. To date, his grievance has been demurred. However, about 2-3 days after submitting his grievance to the Bureau Chief, the Plaintiff was called to a dentist appointment within H.R.Y.C.I

9.  At the July 12th, 2006 dental appointment, the Plaintiff was supposed to be getting work done on his front, left tooth (the one for which he constantly complained). The dentist began his procedure, and the Plaintiff began to recognize that the dentist was too far back in his mouth to be working on the front, left tooth. Before it was clearly confirmed that the dentist was, in fact, working on the wrong tooth, the Plaintiff's bottom, left molar had been pulled and/ or removed from his mouth. There was absolutely nothing wrong with his bottom, left molar, and the bottom, left tooth (the one for which he was in constant pain) was still in his mouth.

10.  The Plaintiff left the dentist and returned to his housing unit in H.R.Y.C.I. After examining his mouth in a mirror, and realizing that the dentist pulled the wrong tooth, the Plaintiff immediately alerted the Corrections Officer working his unit (Officer Banks).

11.  Officer Banks immediately called the Correctional Medical Systems department within H.R.Y.C.I., and explained what the Plaintiff had relayed to him. C/O Banks informed the Plaintiff that the medical department representative simply laughed at the mistake (literally), and stated that they'd "get back to [the Plaintiff]."

12.  Having been undoubtedly become the victim of deliberate indifference and cruel and unusual punishment, the Plaintiff submitted a verbal complaint to Deputy Warden Mark Emig on July 13th, 2006. Deputy Warden Emig was touring the Plaintiff's housing unit, and the Plaintiff approached him about the incident. The Deputy Warden recorded all of the facts of the case, and informed the Plaintiff that he'd investigate the matter. To date, nothing has occurred.

13.  The predicate for the instant Civil Action is based upon what is an obvious and overt act of deliberate indifference and cruel and unusual punishment, which rises to the level of an 8th Amendment abridgement. Additionally, H.R.Y.C.I. offers no remedy to infringements such as those claimed in the instant filing, which is concisely reflected in its Inmate Grievance Committee's decision to rule his grievances "non-grievable." The auspices of 42 U.S.C. § 1983 are the proper and just recourse for this matter.

14.  The Plaintiff's bad tooth still remains in his mouth, and the pain is insurmountable. With Correctional Medical Systems' knowledge of the pain, as well as its' mistake exacted upon the Plaintiff, *prima facie* evidence exists of a knowing, intentional, and malicious act of deliberate indifference and cruel and unusual punishment perpetuated on its' behalf. Relief must be GRANTED.

OCT 20 2006  4:45PM  CMS    NO. 5290  P. 9

Richard E. Blackston
P. Box 8561
Wilson Del.



U.S. District Court

Lockbox 18

Boggs Federal Building

844 King Street

Wilmington Del.

19801

EXHIBIT 2

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF DELAWARE

RICHARD I. BLACKSTON,       )
)
     Plaintiff,        )
)
    v.            )     Civ. No. 06-448-SLR
)
CORRECTIONAL MEDICAL SYSTEMS   )     JURY TRIAL
(CMS)                 )     DEMANDED
)
     Defendant.      )

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Richard I. Blackston v. Correctional Medical Systems (CMS)
Civil Action No. 06-448 SLR

\15_A\LIAB\ESTHOMPSON\LLPG\408305\PASHELBY\.3252\00178

EXHIBIT 3

| STATE OF DELAWARE | PROCEDURE NUMBER: | PAGE: |
|---|---|---|
| BUREAU OF PRISONS | 4.4 | 1 OF 7 |
| PROCEDURE MANUAL | RELATED ACA STANDARDS: | |
| CHAPTER: 4 DECISION-MAKING RELATING TO INMATES | 36 | |
| APPROVED BY THE CHIEF, BUREAU OF PRISONS | SUBJECT:   INMATE GRIEVANCE PROCEDURE | |

EFFECTIVE DATE: Revised 5/15/98    _Saul W. Howard_

I.  AUTHORITY:  DOC Policy 4.4

II.  PURPOSE:

To establish an Inmate Grievance Procedure designed to reduce tension in correctional facilities and to effectively resolve the vast majority of cases within our system.  Every inmate will be provided a timely, effective means of having issues brought to the attention of those who can offer administrative remedies before court petitions can be filed.
NOTE:  Inmates are encouraged to seek their counselors' advice on how to best pursue a response to concerns before prematurely filing a grievance under the guidelines that follow.

III.  APPLICABILITY:

All BOP employees, volunteers, persons or organizations conducting business with the BOP; all inmates under BOP custody or supervision.

IV.  DEFINITIONS:

A.  Bureau Grievance Officer (BGO):  A BOP employee who reviews and mediates appeal of the Warden's/Warden's Designee decision.

B.  Emergency Grievance:  An issue that concerns matters which under regular time limits would subject an inmate to a substantial risk of personal, physical or psychological harm.

C.  Grievance:  A written complaint concerning the substance or application of a policy or practice; any action toward an inmate by staff or other inmates, any condition or incident within the institution that affects an inmate.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: |
|---|---|---|
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | 2 OF 7 |

D.   Inmate Grievance Chair (IGC):  An institutional employee designated to handle inmate grievances.

E.   Inmate Grievance Procedure (IGP):  The formal process provided to inmates to resolve disputes.

F.   Outside Reviewer:  An individual not associated with DOC who hears inmate grievance appeals referred by the BGO and Bureau Chief of Prisons.

H.   Resident Grievance Committee (RGC):  A committee comprised of institutional staff and inmates that hears inmate grievances and makes a recommendation to the Warden/Warden's Designee.

I.   Reprisal:  Any action or threat of action against inmates or staff based solely on their participation or use of the IGP.

J.   Medical Grievance Committee (NGC): An institution's specific medical review authority comprised of a minimum of three medical services contractual staff from the following list:

Health Services Administrator
Director of Nursing
Charge Nurse
Chief Medical Officer
Medical Records Clerk
Mental Health Counselor
Chief Dental Officer
Dental Assistant

V.   PROCEDURE:

1.   Copies of the IGP shall be available in each institutional housing unit, in each library, in each counselor's office, and in each IGC office.

2.   All inmates, regardless of physical condition/security status/administrative status, shall be entitled to use the IGP.  Inmate complaints regarding policies and conditions must be within DOC jurisdiction.  This includes actions by employees, inmates, and incidents occurring within the institution that affect them personally.  NOTE: Policies that have their own formal appeal mechanisms are not grievable through the IGP. Specifically excluded from the IGP are issues concerning Disciplinary, Classification, and Parole

| STATE OF DELAWARE BUREAU OF PRISONS SUBJECT: INMATE GRIEVANCE PROCEDURE | PROCEDURE NUMBER: 4.4 | PAGE: 3 OF 7 |
|---|---|---|

Board decisions.

3. The IGP shall afford the grievant a meaningful remedy. Relief may include an agreement by the Warden/Warden's Designee to remedy an objectionable condition within a reasonable, specified time period; change in institutional policy or practice; or restitution.

4. The IGP prohibits reprisals against staff or inmates for their use or participation in the process. If either participant experiences adverse reactions, they may appeal directly to the Warden/Warden's Designee. The Warden/Warden's Designee shall offer a written response within 10 calendar days upon receipt of the appeal. This decision is appealable to the Bureau Chief of Prisons for final disposition.

5. No staff or inmate named as a party to the grievance shall participate in any capacity in the resolution decision. This instruction includes contact for purposes of information gathering not merely decision making. Grievances filed against the IGC or appealing authority shall be referred to the next higher authority.

6. All grievances shall be kept separate from the inmate's master file. Neither staff or inmates shall have access to these records except to the extent necessary for clerical processing, resolution, or decision compliance.

7. The maximum period between initial grievance receipt and final appeal response shall not exceed 180 calendar days. If a full RGC cannot be convened as scheduled, another hearing shall be rescheduled within 7 calendar days.

8. Inmates are prohibited from submitting more than one grievance arising from a single incident.

9. If more than one inmate files a grievance on the same incident, the IGC will consolidate the staff investigations and RGC hearings into a single "group grievance". All individuals involved will be notified by the IGC.

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4.4 | PAGE: 4 OF 7 |
|---|---|---|
| SUBJECT:   INMATE GRIEVANCE PROCEDURE | | |

10. The IGC shall provide a copy of the response to each IGP step to the grievant within 7 calendar days of IGC receipt.

11. The RGC shall be comprised of two inmates who are elected by a majority vote from their own housing unit and two staff designated by the Warden/Warden's Designee.  Designated staff should include custody and treatment staff, as well as, those who have frequent contact with the grievant's housing unit.  Each RGC member has one vote; the IGC shall only vote to break a tie.

12. Inmate RGC members and two inmate alternates shall serve for a term of six months.  Staff RGC members serve at the discretion of the Warden/Warden's Designee.  One staff member shall be from Treatment and one from Security.

13. The RGC shall deliberate on its findings and forward its recommendation to the Warden/Warden's Designee.

14. All investigative work must be completed and documented prior to the RGC hearing.

15. Inmates are allowed to retract a grievance at any time during the process by written notice to the IGC.

16. The IGC shall submit a monthly IGP status report to the BGO and the Bureau Chief of Prisons.

17. The BGO and the Bureau Chief of Prisons share responsibility for IGP revisions/amendments. Distribution to all points of inquiry listed in #01 above shall be the responsibility of the Warden/Warden's Designee.

18. Remedies which are dependent on departments or agencies outside of the DOC may require more time for coordination of implementation steps.  The IGC shall notify the grievant of the implementation plan and schedule upon receipt of written notification of concurrence by the outside entity.

19. The specific duties of the IGC and BGO are listed in the "Inmate Grievance Procedure Training Manual". Analysis of their performance is the sole responsibility of their immediate supervisors.

| STATE OF DELAWARE BUREAU OF PRISONS SUBJECT: INMATE GRIEVANCE PROCEDURE | PROCEDURE NUMBER: 4.4 | PAGE: 5 OF 7 |
|---|---|---|

## IGP RESOLUTION LEVELS

**Level I (Informal Resolution):**

The IGP process begins when an inmate files Form #584. The grievant must complete this form within 7 calendar days following the incident and forward to the IGC. The IGC shall forward the grievance to the inmates' housing unit supervisors within two days of their receipt. Housing unit supervisors shall investigate, document all findings on Form #175, attempt resolution and report results to the IGC within 3 calendar days of their receipt of the grievance. Resolution ends the IGP process; the IGC closes the file and monitors issues of compliance. Unresolved grievances are referred to Level II administration.

**Level II (RGC Recommendation/Warden's Decision):**

The RGC will convene within 30 calendar days of IGC receipt of the grievance to examine the issue and documented investigative data from Form #175, hear testimony, and make a recommendation. The Grievant will be offered the opportunity to participate in the RGC hearing through examination of all information presented and discussion with all participants. The RGC shall ask any question it feels relevant to the issue. If the RGC determines that further investigation is required it may grant an additional five days, by majority RGC member vote and grievant consent, to complete its work. All RGC work is to be documented and forwarded to the IGC on Form #584 RGC Recommendation. The IGC forwards the RGC recommendation to the Warden/Warden's Designee. The Warden/Warden's Designee responds on Form #584 within 10 calendar days and forwards that response to the IGC for distribution. If the Warden/Warden's Designee and grievant concur with the RGC recommendation the grievance is deemed resolved; the IGC closes the file and monitors issues of compliance. If there is no concurrence, the case is referred to Level III administration.

**Level III (The Final Decision):**

The BGO will review the grievance file upon receipt. Concurrence with the Warden/Warden's Designee decision and signature by the BGO and Bureau Chief of Prisons ends the IGP process; the IGC closes the file and monitors issues of compliance. At the BGO's discretion, mediation between grievant and the Warden/Warden's Designee may be attempted or Outside Review recommended. The BGO shall recommend Outside Review in only those instances where interpretation of law or expansion of policy are necessary. The Bureau Chief of Prisons may accept or reject the BGO's written

| STATE OF DELAWARE | PROCEDURE NUMBER: | |
| BUREAU OF PRISONS | 4.4 | |
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | 6 |

recommendation.  Decisions by the Bureau Chief of Prisons a
final and not open to grievant interpretation.  The Bureau (
of Prisons will return his final decision and the grievance i
to the IGC for closure and monitoring for issues of compliance

Emergency Grievance:

Issues that concern substantial risk of personal, physical or
psychological inmate injury shall be addressed immediately by t
Warden/Warden's Designee.  A copy of the grievance shall be se
to the IGC upon receipt by the Warden/Warden's Designee.  And t
Warden/Warden's Designee shall respond within one calendar day.
Grievant appeals of the Warden/Warden's Designee decision will t
decided by the Bureau Chief of Prisons within one calendar day
upon receipt of the emergency appeal.  NOTE: If the
Warden/Warden's Designee should determine that the grievance doe
not meet the emergency criteria, the grievance shall be returned
to the inmate for processing through the normal IGP process
steps.

Medical Grievance:

All medical grievances must be submitted to the Inmate Grievance
Chairperson (IGC) at the respective institution on Form #585.
If, by chance, an inmate sends a grievance directly to the
medical services contractual staff, they are to forward it first
to the IGC who will log it in the institution's grievance log and
then return it to the medical services contractual staff for
action.

The appropriate medical staff will review the grievance and
denote actions taken on the Medical Log Form #586.

The medical services contractual staff will attempt an informal
resolution with the inmate, upon discussion over the treatment
defined on the Medical Log Form.  If the Medical Grievance is
resolved the inmate acknowledges this by his signature on Form
#585 Informal Resolution.  This signed form is forwarded to the
IGC who will close out the case.

Failure to resolve the grievance informally, results in a Medical
Grievance Committee hearing which will not include any medical
services contractual staff previously involved in the informal
resolution process.  The IGC and the inmate must be present at
this hearing.

Resolution closes the case; failure to resolve the case results
in the inmate completing the MGC Appeal Statement section of Form
#585.  Upon receipt, the IGC forwards the file to the Bureau

| STATE OF DELAWARE BUREAU OF PRISONS | PROCEDURE NUMBER: 4-4 | PAGE: 7 OF 7 |
|---|---|---|
| SUBJECT:  INMATE GRIEVANCE PROCEDURE | | |

Grievance Officer (BGO).  The BGO recommends a course of action to the Bureau Chief of Prisons, who renders a final decision.

**Universal Grievance:**

Issues that concern the entire system and not just one inmate, a group of inmates, or one institution shall be presented by the BGO to the Bureau Chief of Prisons.

**Institutional Transfer:**

When possible, transfers shall be delayed for any inmate who has filed a grievance and been notified of an RGC hearing date until the hearing has concluded.  If circumstance requires immediate transfer, the IGC at the institution where the grievant filed will proceed in the grievant's absence utilizing the normal IGP process steps through Level II.  The Warden/Warden's Designee decision will be forwarded to the IGC at the grievant's new location for review.  If the grievant appeals to Level III, the IGC at the grievant's new location shall forward the file to the IGC at the original location for BGO review.  Grievances filed against the sending institution after an inmate's transfer, but inside the standard seven day window following an incident, shall be forwarded by the IGC at the new location to the IGC at the original location for processing.

**Appeals:**

Grievant appeals must be signed, dated and state the specific reasons on Form #584 Grievance Appeal.  This form must be given to the IGC who is responsible for tracking the status of each grievance.  The IGC will forward the appeal and grievance file to the BGO.  Grievants shall have 3 calendar days upon receipt of their copy of the Warden/Warden's Designee decision to appeal, as well as, to include any additional information for review at the next level.  NOTE:  The Bureau Chief of Prisons decisions are final and not appealable.

**Attachments**

EXHIBIT 4

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RICHARD I. BLACKSTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 06-448-SLR |
| | ) | |
| CORRECTIONAL MEDICAL SYSTEMS | ) | JURY TRIAL |
| (CMS) | ) | DEMANDED |
| | ) | |
| Defendant. | ) | |

# SEALED DOCUMENTS

Contains CONFIDENTIAL INFORMATION
To Be Opened Only By Or As Directed By The Court
Richard I. Blackston v. Correctional Medical Systems (CMS)
Civil Action No. 06-448 SLR

\\5_A\LIA3\ESTHOMPSON\LLPC?408305\PASHELBY\13252\00\78

EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

NOV 08 2000

FOR THE DISTRICT OF DELAWARE

William E. O'Neil,                    )
                                      )
              Plaintiff,              )
     v.                               )
                                      )    C.A. No. 99-849-SLR
Rick Kearney, Jean Snyder,            )
Dr. Weiss, Karen Clark,               )
                                      )
              Defendants.             )

## MEMORANDUM ORDER

### I.    INTRODUCTION

William E. O'Neil ("plaintiff") is a Delaware prison inmate
incarcerated at Sussex Correctional Institution ("SCI") in
Georgetown, Delaware.  The defendants are the prison warden and
three employees of Prison Health Services (collectively
"defendants").  Plaintiff filed this action under 42 U.S.C. §
1983, asserting that defendants violated his Eighth Amendment
right to be free from cruel and unusual punishment for the
defendants' failure to protect the plaintiff from an attack by
another inmate.  Plaintiff seeks compensatory and punitive
damages.  Procedurally, the court is faced with motions to
dismiss from defendants.

### II.   FACTS

The basis for plaintiff's complaint is the placement of a
violent inmate into his infirmary room on November 8, 1997.
Plaintiff was in the SCI infirmary, confined to a wheelchair, for

"grievance for prisoner and institution matters."[2]   (D.I. 2)   In
Booth, the court held that prisoners must exhaust administrative
remedies available to them prior to filing a § 1983 action,
whether or not the remedies provide the inmate-plaintiff with the
relief desired.   206 F.3d at 291 (citing Nyhuis v. Reno, 204 F.3d
65, 78 (3rd. Cir. 2000)).   By applying § 1997e(a) without
exception, the policies underlying the exhaustion requirements
are promoted, that is, the agency involved is given the
opportunity to discover and correct its own mistakes and also
conserve judicial resources.   Nyhuis, 204 F.3d at 75.

V.    CONCLUSION

Therefore, at Wilmington this 6th day of November, 2000,

IT IS ORDERED that the motions to dismiss filed on behalf of
defendants Rick Kearney, Jean Snyder, Dr. Weiss, and Karen Clark
are granted.

_____
United States District Judge

---

[2] Presumably this statement evidences that plaintiff thought
the grievance process was only for prisoner and institution
matters.

4

EXHIBIT 6

1 of 1 DOCUMENT

FRANK WHALEN, JR., Plaintiff, v. CORRECTIONAL MEDICAL SERVICES, DR.
KEITH IVENS AND MELODY A. THORPE, Defendants.

Civil Action No. 02-246 JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 21334

November 28, 2003, Decided

**SUBSEQUENT HISTORY:** Complaint dismissed at *Whalen v. Ivens, 2004 U.S. Dist. LEXIS 9532 (D. Del., May 11, 2004)*

**PRIOR HISTORY:** *Whalen v. Corr. Med. Serv., 2003 U.S. Dist. LEXIS 14562 (D. Del., Aug. 18, 2003)*

**DISPOSITION:** [*1] Motion to dismiss complaint granted.

**COUNSEL:** Frank Whalen, Jr., Pro se Plaintiff.

Kevin J. Connors, Esquire of MARSHALL, DENNEHEY, WARNER, COLEMAN AND GOGGIN, Wilmington, Delaware. Attorney for Defendant, Melody A. Thorpe

**JUDGES:** JOSEPH J. FARNAN, JR., UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** JOSEPH J. FARNAN, JR.

**OPINION:**

### MEMORANDUM OPINION

Wilmington, Delaware

**Farnan, District Judge.**

Presently before the Court is the Motion Of Defendant, Melody A. Thorpe, To Dismiss Plaintiff's Complaint. (D.I. 35.) For the following reasons, the Court will grant Defendant's Motion.

### BACKGROUND

Plaintiff is an inmate alleging that various acts by Correctional Medical Services and its employees amounted to a deliberate indifference to his medical needs, and therefore, violated his *Eighth Amendment* rights. Plaintiff alleges that during his incarceration Defendant administered to him an excessive amount of the drug Nubain, leading to his "near death and paralysis." (D.I. 2.) Defendant is a nurse practitioner who was employed by Correctional Medical Services at the time Plaintiff was treated. By her Motion (D.I. 35), Defendant moves [*2] to dismiss Plaintiff's Complaint.

### STANDARD OF REVIEW

When reviewing a motion to dismiss pursuant to *Rule 12(b)(6) of the Federal Rules of Civil Procedure*, a court must "accept as true the factual allegations in the Complaint and all reasonable inferences that can be drawn therefrom." *Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000)*. A court will grant a defendant's motion to dismiss only if it appears that the plaintiff could prove no set of facts that would entitle him or her to relief. A court is to construe a handwritten pro se complaint liberally, holding it to a less stringent standard than pleadings drafted by attorneys. *Estelle v. Gamble, 429 U.S. 97, 106, 50 L. Ed. 2d 251, 97 S. Ct. 285 (1976)*.

### DISCUSSION

Defendant contends that Plaintiff has not satisfied the notice pleading required of *Federal Rule of Civil Procedure 8(a)*. Specifically, Defendant contends that Plaintiff's Complaint does not state a claim of deliberate indifference amounting to an *Eighth Amendment* violation. Further, Defendant contends that Plaintiff's Complaint [*3] does not allege that she personally committed any acts amounting to a deliberate indifference to Plaintiff's medical needs. In response, Plaintiff contends that his Complaint sufficiently alleged acts demonstrating Defendant's deliberate indifference in administering excessive doses of Nubain thereby leading to his alleged injury.

In order to successfully allege a *Section 1983* action for failure to provide medical care under the *Eighth Amendment*, an inmate plaintiff must allege practices that violate "evolving standards of decency." *Estelle, 429 U.S.*

at 102. Medical malpractice does not become an *Eighth Amendment* violation merely because the plaintiff is a prisoner. *Id. at 105*. Instead, the defendant's action must be said to constitute "'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'" *Id. at 106*. To meet this standard of deliberate indifference, the defendant must know of the inmate's condition and disregard an excessive risk of the inmate's health or safety. *Farmer v. Brennan, 511 U.S. 825, 837, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994).* Applying these standards, [*4] the Court will grant Defendant's motion to dismiss.

In his Complaint, Plaintiff alleges that "he was given an overdose of the Narcotic [sic] Nubain by defendants on 12-18-2000 at 2:30 P.M.; which led to plaintiff coming near death and paralysis." (D.I. 2.) Although this allegation sufficiently pleads an action for medical malpractice, an incident of medical malpractice does not amount to

an *Eighth Amendment* violation simply because Plaintiff is an inmate. See *Estelle, 429 U.S. at 102*. Accordingly, even when viewing Plaintiff's Complaint under the liberal standards provided by *Rule 8(a)* and Estelle, the Court concludes that Plaintiff has failed to state a claim upon which relief can be granted.

An appropriate order will be entered.

**ORDER**

WHEREAS the Defendant Melody A. Thorpe filed a Motion To Dismiss Plaintiff's Complaint (D.I. 35);

IT IS HEREBY ORDERED this 20 day of November, 2003, that Defendant Melody A. Thorpe's Motion To Dismiss Plaintiff's Complaint (D.I. 35) is GRANTED.

JOSEPH J. FARNAN, JR.

UNITED STATES DISTRICT JUDGE